IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:19-CR-101 |
| | § | |
| LARRY ERNEST TILLERY | § | |

## FACTUAL BASIS AND STIPULATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney in and for the Eastern District of Texas, joined by Larry Tillery, defendant, and his counsel of record, Chip Lewis, presents this factual basis and stipulation in support of the defendant's Plea of Guilty to Counts One and Two of the Amended information herein, and, in support thereof, would show the following:

1. That Larry Ernest Tillery, defendant herein, hereby stipulates and agrees to the truth of all matters set forth in this factual basis and stipulation, and agrees that such admission may be used by the Court in support of his plea of guilty to Count One of the Amended information, alleging one violation of 18 U.S.C. § 1957, Engaging in Monetary Transactions in Criminally Derived Property that is Derived from a Specified Unlawful Activity and Count Two of the information, alleging a violation of 26 U.S.C. § 7201 Willfully Attempting to Evade or Defeat a Tax.

2. The Specified Unlawful Activity that Larry Tillery criminally derived property from is 18 USC § 1955, Conducting, Managing, Directing, or Owning an Illegal Gambling Business.

3. That the Defendant, Larry Tillery, who is pleading guilty to Counts One and Two of the Amended information is one and the same person charged therein.

4. That the events described in Counts One and Two of the Amended information occurred in the Eastern District of Texas and elsewhere.

5. That had this matter proceeded to trial, the government, through the testimony of witnesses, including witnesses from banks, Special Agents of Homeland Security Investigations, Special Agents of the Criminal Investigation Division of the Internal Revenue Service and through admissible exhibits including bank records, telephone records, recordings and seized evidence, would have proven, beyond a reasonable doubt, each and every essential element of the offense alleged in Counts One and Two of the Amended information; specifically, the government would have proven the following stipulated facts.

6. Larry Tillery was engaged in the business of accepting illegal wagers on sporting events. This is commonly known as bookmaking and the occupation is commonly referred to as being a bookmaker or bookie. Larry Tillery has been a bookie since 1985 and has been his primary occupation during that time.

7. Larry Tillery owned and operated Daylight Motors and Lamar Capital in Beaumont, Texas. Daylight Motors is a used car dealership that offers in-house financing and Lamar Capital is a holding company for Daylight Motors. Larry Tillery used these two companies as a front to launder illicit proceeds from his illegal gambling enterprise.

8. Larry Tillery utilized the website "www.luckyducksports.com," which is hosted in

Costa Rica, to receive and track wagers from his betting clients. This website allowed his bettors to place wagers online on sporting events, including professional and collegiate basketball, baseball and football games.

9. Larry Tillery managed this website from his home and used car dealership, Daylight Motors, in Beaumont, Texas. Luckyducksports.com allowed bettors to place wagers in Texas and other states and the wagering information was transmitted interstate and internationally to the website's host servers in Costa Rica. Larry Tillery paid fees in excess of $10,000 in cash to Houston, Texas based representatives of the host company for luckyducksports.com.

10. Larry Tillery utilized the United States Postal Service Express Mail to send and receive illegal cash gambling proceeds. Larry Tillery received and sent electronic funds transfers through banks in the United States to settle gambling debts derived from illegal gambling activities.

11. Judy Tillery, Larry Tillery's wife, assisted Larry Tillery in laundering cash proceeds of illegal gambling activities. Judy Tillery laundered illicit gambling proceeds by depositing cash into her personal bank account at Beaumont Community Credit Union in Beaumont, Texas, and then writing checks to bank accounts controlled by Larry Tillery. Judy Tillery structured these cash deposits in amounts under $10,000 in an attempt to evade federal currency transaction reporting requirements. Judy Tillery conducted these transactions at direction of Larry Tillery.

12. Brian Tillery, Larry Tillery's son, aided Larry Tillery by collecting money from

bettors and making payments to bettors for his father; checking luckyducksports.com on a regular basis to make Larry Tillery aware of what bets were placed; accepting illegal gambling funds from Larry Tillery and making wire transfers to pay illegal gambling debts for Larry Tillery; and mailing packages of currency in excess of $10,000 via the United States Postal Service at the request of Larry Tillery, which was derived from illegal gambling activities. Brian Tillery performed the above actions at the direction of Larry Tillery.

13. Larry Tillery knew that federal law required him to register as a bookmaker with the Internal Revenue Service and to file monthly excise tax returns to report total wagers he accepted during the month. Larry Tillery also knew that he was required to pay gross wagering excise taxes of 2% on wagers he accepted each month. Larry Tillery intentionally chose not to report or pay taxes to the IRS based on the illegal wagers he accepted each month. During September through November of 2016, Larry Tillery accepted at least four hundred and fifty (450) wagers totaling $5,060,150. These wagers are subject to the two percent federal gross wagering excise tax and Larry Tillery evaded gross excise wagering taxes of $29,717 in September 2016, $34,423 in October 2016 and $37,063 in November 2016 for a three month total of $101,203.

14. Larry Tillery evaded the assessment of gross wagering taxes by making false statements to his certified public accountant about whether he had other sources of income, by settling a majority of his wagers in cash, directing Judy Tillery to structure cash deposits into the banking system and by utilizing an illegal

gambling website based in Costa Rica.

15. Between 2011 and 2016, Larry Tillery accepted at least $52,000,000 in illegal wagers on sporting events. Larry Tillery did not report these wagers to the IRS nor pay gross excise taxes on these wagers. The gross wagering taxes that resulted from wagers Larry Tillery accepted between 2011 and 2016 total $1,040,000. This tax due figure includes $101,203 in gross wagering excise taxes listed above in this document for wagers accepted in September 2016 – November 2016.

16. On July 14, 2014, Larry Tillery received a $200,000 wire transfer from Phil Ivey. This payment was generated from illegal sports wagers that Phil Ivey placed with Larry Tillery. This wire transfer was sent from Phil Ivey's EagleBank account in and received into the Lamar Capital bank account, controlled by Larry Tillery, at Community Bank in Beaumont, Texas. Larry Tillery directed Phil Ivey to send this wire transfer to the Lamar Capital bank account.

17. The investigation traced a total of 125 financial transactions in excess of $10,000 derived from illegal gambling that utilized the United States banking system. These financial transactions total $32,383,841 and occurred between 2010 and 2016.

18. The following items were all proceeds from illegal gambling and are subject to forfeiture by the federal government.

    a. $ 230,100 in US currency seized from Larry Tillery during a traffic stop in Harris County, Texas;

    b. $215,200 in US currency seized from Joshua Villarreal during a traffic stop

in Houston, Texas;

c. $180,000 in US currency seized from Hertzel Zalewski at the Houston Intercontinental Airport (IAH) in Houston, Texas;

d. $68,952 in US currency, a pearl necklace, Chanel pearl necklace, Chanel necklace, diamond gold ring, Chanel earrings, diamond ring, Rolex watch with box, six (6) Rolex watches, Tag Heuer watch, an autographed Joe Nameth #12 Football Jersey, and an autographed Mark Ingram #22 football jersey seized from Larry Tillery's residence located at 5 Estates of Montclaire, Beaumont, Texas;

e. $219,529 in US currency seized from the residence of Brian Tillery located at 4320 Christina Court, Beaumont, Texas;

f. $4,300 in US currency seized from Daylight Motors located at 1355 11th Street, Beaumont, Texas;

g. $4,278 in US currency seized from Daylight Motors located at 6140 Eastex Freeway, Beaumont, Texas;

h. $1,035,625 in US currency from eight (8) seizures associated with Larry Tillery between April 14, 2017 through November 2, 2017.

### DEFENDANT'S SIGNATURE AND ACKNOWLEDGMENT

I have read this factual basis and stipulation and the information or have had them read to me and have discussed them with my attorney. I fully understand the contents of

this factual basis and stipulation and agree without reservation that it accurately describes the events and my acts.

Dated: 6/25/19

_____
Larry Ernest Tillery
Defendant

### DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

I have read this factual basis and stipulation and the information and have reviewed them with my client, Larry Ernest Tillery. Based upon my discussions with the defendant, I am satisfied that the defendant understands the factual basis and stipulation as well as the information, and is knowingly and voluntarily agreeing to these stipulated facts.

Dated: 6/25/19

_____
Chip Lewis
Attorney for the Defendant

Respectfully submitted,

JOSEPH BROWN
UNITED STATES ATTORNEY

Dated: 6-25-19

_____
Christopher Tortorice
Assistant United States Attorney