**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:19-CR-101(1) |
| | § | |
| LARRY EARNEST TILLERY | § | |

## MEMORANDUM AND ORDER

Pending before the court is Larry Earnest Tillery's ("Tillery") Motion for Early Release from Probation (#51). Tillery seeks early release from his five-year term of probation. Tillery's supervising United States Probation and Pretrial Services ("Probation") Officer in the Eastern District of Texas prepared a report and recommends that the court deny his motion, allowing Tillery to complete his five-year term of supervised release, as ordered. The Government is also opposed to Tillery's request for early termination. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Tillery's motion should be denied.

I.      Background

On June 17, 2019, the United States Attorney for the Eastern District of Texas filed an Information against Tillery, charging him in Count One with Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity, in violation of 18 U.S.C. § 1957, and in Count Two with Tax Evasion, in violation of 26 U.S.C. § 7201. The United States Attorney filed an Amended Information against Tillery on June 25, 2019, charging him with essentially the same two violations. On June 25, 2019, Tillery pleaded guilty to both offenses. On June 12, 2020, the late Judge Thad Heartfield sentenced him to 33 months' imprisonment as to both counts, to be served concurrently, followed by 2 years of supervised release as to both counts, to be served

concurrently.  On November 4, 2020, Judge Heartfield reduced Tillery's sentence to 14 months' home confinement, to be followed by 2 years of supervised release.  On November 10, 2020, Judge Heartfield reduced Tillery's sentence yet again to 5 years' probation as to both counts, to be served concurrently.  Tillery began serving his five-year term of probation on November 10, 2020.  Due to a series of resettings, continuances, and other delays, Tillery was never taken into custody and has spent no time incarcerated for these offenses.

In his motion, Tillery, age 73, asks the court to terminate his probation at this time, having completed just over 46 months of his five-year term.  Tillery states that he has fully complied with all the terms of his probation and has no need for programming or treatment.  He reports that he has successfully met all monetary obligations totaling over $1,040,000.  He further maintains that he "has a new look on life after being baptized at the First Baptist Church in Beaumont," adding that "[h]e hasn't missed church in years and has truly found god in his life."  Tillery states that he is the father of two adult children and his business, Daylight Motors, employs five people.  He explains that as a result of this case, he agreed to surrender his dealer's license.  Tillery asserts that he is seeking early release from probation so that he will be able to apply for a dealer's license in order to obtain financing to satisfy large outstanding debts and to purchase new inventory for his business.  He claims that he is unable to secure financing due to his status of being on federal probation and will likely have to close Daylight Motors if he is unable to satisfy his prior debts.

II.   Analysis

Title 18, United States Code, Section 3564(c) authorizes a district court, after considering the factors set forth in § 3553(a), to "terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor or an infraction or at any time

after the expiration of one year of probation in the case of a felony, if it is satisfied that such action

is warranted by the conduct of the defendant and the interest of justice."[1]  18 U.S.C. § 3564(c).

The decision whether to grant a motion for early termination of a term of probation is a matter of

sentencing court discretion.  *United States v. Hartley*, 34 F.4th 919, 928 (10th Cir. 2022); *United

States v. Morris*, No. 15-10085-09-JWB, 2023 WL 2987757, at *1 (D. Kan. Apr. 18, 2023);

*United States v. Vaisman*, No. 15-348, 2020 WL 5627139, at *1 (D. N.J. Aug. 18, 2020).

Courts have routinely found that "mere compliance with the conditions of probation" does

not warrant early termination of a probation term, as such behavior is required by law.  *United

States v. Salazar*, 693 F. App'x 565, 566 (9th Cir. 2017); *e.g.*, *United States v. Wilkinson*, No.

3:18-CR-00009 (TBR), 2022 WL 1626575, at *2 (W.D. Ky. May 23, 2022) (pointing out that

"compliance is expected of an offender on probation; compliance, by itself, does not warrant early

termination"); *United States v. Reed*, No. CR 15-100, 2020 WL 4530582, at *4 (E.D. La. June

5, 2020) ("[C]ompliance with applicable terms and conditions of probation is expected of all

defendants and does not warrant early termination."); *United States v. Acosta-Triana*, No. CR 01-

0817 (ES), 2017 WL 4786559, at *2 (D.N.J. Oct. 23, 2017) (finding general compliance with

probation terms "insufficient to terminate probation"); *United States v. Rusin*, 105 F. Supp. 3d

291, 292 (S.D.N.Y. 2015) (stating that full compliance with probation conditions is what is

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the
defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the
need to protect the public from further crimes of the defendant; the need to provide the defendant with
needed educational or vocational training, medical care, or other correctional treatment in the most
effective manner; the kinds of sentences and sentencing ranges established for the applicable category of
offense committed by defendants with similar characteristics under Sentencing Commission guidelines and
policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of
sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide
restitution to any victims of the offense.  18 U.S.C. § 3553(a).

expected of defendants).  As the court commented in *United States v. Seebachan*, "even if a defendant's record while on probation is 'apparently unblemished, this alone cannot be sufficient reason to terminate [probation] since, if it were, the exception would swallow the rule.'"  No. 12 Crim. 505 (GBD), 2018 WL 2085654, at *1 (S.D.N.Y. Apr. 24, 2018) (quoting *United States v. Gerritson*, No. 01 CR 1081 (JCF), 2004 WL 2754821, at *3 (S.D.N.Y. Dec. 1, 2004)).  Probation does not become "unnecessary simply because a person has complied with the requirements." *United States v. Aguilar*, No. 1:19-cr-00224-BLW, 2024 WL 357024, at *1 (D. Idaho Jan. 31, 2024).

Early termination is typically granted only upon a showing of new or changed circumstances not contemplated during sentencing, "such as exceptionally good behavior." *United States v. Guidry*, No. 3:19-DR-332-S, 2020 WL 908542, at *1 (N.D. Tex. Feb. 13, 2020); *see Reed*, 2020 WL 4530582, at *4 ("[Defendant] has not presented any facts to demonstrate that he has taken any action beyond what is [ordinarily] required of him."); *United States v. Williams*, No. CR 12-00253, 2017 WL 1383428, at *1 (W.D. Pa. Apr. 18, 2017) (finding compliance with probation terms neither exceptional nor extraordinary); *United States v. Hilton*, No. CR 13-172 PJH, 2014 WL 3728176, at *3 (N.D. Cal. July 28, 2014) (finding defendant had failed to demonstrate "exceptionally good behavior" or "new or unforseen circumstances" that were not contemplated at the initial imposition of probation sufficient to warrant early termination, although commenting that his recent charitable work was commendable).  "The decision to terminate probation early is left to a court's discretion and has traditionally only been granted when a defendant can show changed circumstances." *Vaisman*, 2020 WL 5627139, at *1-2 (denying early termination of five-year term of probation to 81-year-old defendant in poor health who pleaded

4

guilty to a tax violation, noting that mere compliance with the conditions of probation is expected and there was no showing of any changed circumstances from the time of sentencing when he was granted a variance).

Here, Tillery has complied with the conditions of his probation to date and has maintained a used car business that employs five people.  Yet, he "has failed to demonstrate 'exceptionally good behavior' or other changed circumstances that would render the [five]-year probation term either too harsh or inappropriately tailored to serve general punishment goals." *Hilton,* 2014 WL 3728176, at *3 (quoting *United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000)).  When imposing Tillery's reduced sentence of five years' probation, the sentencing court carefully considered the relevant 3553(a) factors and determined that five years' probation would be "sufficient, but not greater than necessary, to accomplish the goals of sentencing." *United States v. Lewis*, 907 F.3d 891, 895 (5th Cir. 2018); *accord Wilkinson*, 2022 WL 1626575, at *2 (finding "the sentence imposed to be commensurate with the charge" and not to present "an unwarranted sentence disparity when compared against defendants with similar records who have been found guilty of similar conduct"); *United States v. Ferrell*, 234 F. Supp. 3d 61, 64 (D.D.C. 2017) (determining the defendant's sentence of 48 months' probation was "sufficient, but not greater than necessary, to accomplish the goals of sentencing" (citing 18 U.S.C. § 3553(a))); *see United States v. Sutton*, No. 4:19-MJ-1146-RJ, 2021 WL 1807261, at *3-4 (E.D.N.C. May 5, 2021) ("[T]he fact that [the defendant] has complied with his conditions of probation to date is not a compelling reason to terminate his probation less than six months into his three year term" when a "36-month probationary period was a significant part of the punishment imposed in [his] case."). "Final sentences should not be terminated lightly." *Williams*, 2017 WL 1383428, at *2.

Tillery's offenses of conviction entail his engaging in bookmaking and operating a nation-wide, illegal sports gambling enterprise from 1985 to 2017 based in Beaumont, Texas, and failing to pay taxes on the income he derived from his gambling operation.  According to his Presentence Investigation Report ("PSR"), Tillery's illegal gambling enterprise was his primary occupation during this time period.  He used his two legitimate businesses, Daylight Motors and Lamar Capital, as fronts to launder millions of dollars of illicit gambling proceeds.  Daylight Motors is described in the PSR as a used car dealership that offers in-house financing, and Lamar Capital is depicted as a holding company for Daylight Motors.  In his role as a "bookie," Tillery primarily accepted wagers on sporting events from his betting "customers" and collected and delivered money won or lost on bets.  He utilized a Costa Rica-based internet website that allowed customers to log on and place bets on sporting events while permitting Tillery access to determine from whom he needed to collect money and to whom he needed to pay money.  Tillery was required by federal law to register as a bookmaker with the Internal Revenue Service ("IRS") and to file monthly excise tax returns to report total wagers he accepted monthly.  He was also required to pay an excise tax of 2% on wagers he accepted each month.  Tillery involved his wife and son in his illicit gambling operations.  His wife, Judy Tillery, also an officer of Daylight Motors, assisted him in laundering the cash proceeds by depositing cash into her personal bank account and writing checks to bank accounts controlled by Tillery.  She structured these cash deposits in amounts less than $10,000 to evade federal currency transaction reporting requirements.  His son, Brian Tillery, another officer of Daylight Motors, aided Tillery by collecting money from and making payments to bettors, monitoring the website regarding betting activity, accepting illegal gambling funds from Tillery, making wire transfers to pay illegal

6

gambling debts on behalf of Tillery, and mailing packages of currency exceeding $10,000 derived from illegal gambling activities via the United States Postal Service.

Between 2011 and 2016, Tillery accepted illegal sporting event wagers totaling at least $52,000,000. He did not report those wagers to the IRS or pay gross excise taxes on them. The gross wagering tax that resulted from wagers Tillery accepted between 2011 and 2016 was $1,040,000. The investigation traced a total of 125 financial transactions of more than $10,000 derived from illegal gambling that utilized the United States banking system between 2010 and 2016 and totaled $32,383,841. Probation calculated Tillery's total offense level to be 20 with a criminal history category of I, which resulted in a guidelines sentence of 33 to 41 months of imprisonment. Pursuant to a binding plea agreement, Tillery was initially sentenced to 33 months of imprisonment as to each count, to be served concurrently. His sentence was subsequently reduced to 14 months of home confinement and later to 5 years of probation as to each count, to be served concurrently, allowing him to avoid any period of imprisonment.

In this situation, the court finds early termination of Tillery's probation unwarranted. Although Tillery points to his compliance with the conditions of his probation, his religious enlightenment, and his goal of obtaining the reinstatement of his dealer's license in order to secure financing for his used car business, he identifies no new or exceptional circumstances that justify early termination. *See Reed*, 2020 WL 4530582, at *2 ("[P]roof of compliance with the terms of probation does not necessarily equate to 'exceptionally good behavior' justifying early termination."); *Ferrell*, 234 F. Supp. 3d at 64 (finding full compliance with the terms of probation, good behavior, and hope to take advantage of career advancement opportunities did not warrant early termination). In connection with its investigation, Probation contacted the Texas

7

Department of Motor Vehicles, which confirmed that Tillery's dealer's license was closed in 2022 and that he has not applied for another license.   According to Probation, Tillery's file has a note for a "Manager's Review" if he applies for another dealer's license, but his status on federal supervision would not automatically disqualify him for a dealer's license.   Tillery, likewise, presents no viable evidence that his being on probation precludes him from obtaining financing. He submits an unsworn letter from a friend of his who appears to have no demonstrable expertise or knowledge in the field of finance, much less insight regarding the availability of financing for persons on federal probation.   While Tillery's criminal record, which includes his federal felony convictions for financial crimes and tax evasion, may have a negative impact on his obtaining a dealer's license and on securing financing, there is no credible evidence that his being on probation acts as a *per se* disqualification.   Moreover, there is no suggestion that either his wife or son, who are officers of Daylight Motors and are no longer on probation, has applied for or would be precluded from acquiring a dealer's license or obtaining financing.   Finally, Tillery fails to disclose how Daylight Motors has survived as a business for the past four years while he has been on probation if it is experiencing such dire financial problems as he claims.

In addition, granting Tillery such relief would not reflect the serious nature of his offenses of conviction.   Tillery's sentence of 5 years' probation is already significantly below the 33 to 41 months of imprisonment authorized by the sentencing guidelines.   The court finds no compelling reason for further leniency.   *See United States v. Castillo-Cruz*, No. 20-60018-JWB, 2022 WL 2817610, at *2 (D. Kan. July 19, 2020) (denying motion for early termination of probation observing that the defendant's sentencing range included a term of incarceration but the court sentenced the defendant to a 5-year term of probation); *United States v. Niren*, No. 13-0171, 2016

WL 3958737, at *2 (W.D. Pa. July 22, 2016) (noting when declining to terminate the defendant's term of probation that although he "could have spent two years in prison[,] he was sentenced to no prison term" and declaring "there is no compelling reason for further leniency").  In fact, granting Tillery's motion "would also create a sentencing disparity" with other similarly situated defendants, "which is undesirable under Section 3553(a)(6)." *Williams*, 2017 WL 1383428, at *2; *accord United States v. Steven*, 455 F. Supp. 3d 1092, 1100 (D. Kan. 2020).  "Mere compliance with probationary terms will not typically justify the early termination of probation, and so other similarly situated defendants will not receive the same relief Defendant requests." *Williams*, 2017 WL 1383428, at *2.

Given Tillery's favorable plea agreement and subsequent sentence reductions as well as the nature and circumstances of his offenses of conviction, early termination of his probation term is not in the interest of justice.  In the court's view, requiring Tillery to complete his five-year sentence of probation reflects the seriousness of his offenses and will serve as just punishment, promote respect for the law, and deter future violations of the law.  Tillery's sentence continues to be sufficient, but not more than necessary, to accomplish the goals of sentencing.  The sentencing court determined that a five-year probationary term was the appropriate punishment to fit his crimes.  It still is.  *See Williams*, 2017 WL 1383428, at *2.  While Tillery's achievements to date should be acknowledged, continuing him on supervision will provide him the best opportunity for success in reentry in view of his prior 30-year involvement in illegal bookmaking, which was his primary occupation.  Moreover, he utilized Daylight Motors, the business for which he now seeks financing, as a front for laundering the illicit proceeds of his nation-wide gambling operation.  Requiring Tillery to complete his entire, five-year term of

probation, which includes special conditions for gambling restrictions and financial monitoring, safeguards against the reoccurrence of criminal activity, while imposing only a minimal burden on Tillery. As Probation reports, Tillery was transferred to an administrative low-risk caseload on June 1, 2022, in which his required interaction with the Probation Office is minimal. At this juncture, spending an additional 13 months on probation seems to be a small price to pay for 30 years of illegal bookmaking, gambling, and money laundering. Generally, early termination of probation is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary accomplishments while on supervision that would warrant such an action. Tillery does not identify any such circumstances in his motion and is instead seeking early termination of his probation primarily for complying with the conditions imposed by the court. Thus, although Tillery appears to be on the right path, the court believes that completion of his full term of probation appropriately reflects the seriousness of his offenses, deters future criminal conduct, and provides needed structure for his continued rehabilitation.

As Probation points out:

> Though Mr. Tillery is to be commended for his compliance thus far on probation, the U.S. Probation Office concurs with the U.S. Attorney's Office and it is believed that continuing the probation term would be in the best interest of the community. Mr. Tillery has benefited from leniency; having his original sentence of 33 months imprisonment reduced twice, ultimately granting him 5 years probation. He also has a history of gambling violations and the presentence report indicates the instant offense conduct resulted from Mr. Tillery being a bookie from 1985 to November 2016, with his illegal gambling enterprise being the primary occupation during that time. Moreover, his business, Daylight Motors, was used during that timeframe, and in conjunction with a holding company, as a front to launder a sizeable amount of illicit gambling proceeds. Mr. Tillery provides no extraordinary or compelling reason for early termination aside from financial debt and general compliance. As such, the U.S. Probation Office respectfully recommends the Court deny this motion and allow the probation supervision to continue throughout the original term. Mr. Tillery will be encouraged to continue progressing towards his goals while on probation.

The court concurs with Probation's assessment of the situation and finds that early termination of Tillery's term of probation would not be in the interest of justice.

III.    <u>Conclusion</u>

      In accordance with the foregoing, Tillery's Motion for Early Release from Probation (#51) is DENIED.

      SIGNED at Beaumont, Texas, this 30th day of September, 2024.

                             *Marcia A. Crone*

                              MARCIA A. CRONE
                      UNITED STATES DISTRICT JUDGE